**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| XIAOYUAN ZHANG, Individually and On Behalf of All Others Similarly Situated, | ) ) ) **Case No.** |
| Plaintiff, | ) ) |
| v. | ) **CLASS ACTION COMPLAINT** ) |
| VALARIS PLC, THOMAS P. BURKE, and JONATHAN H. BAKSHT, | ) **JURY TRIAL DEMANDED** ) ) |
| Defendants. | ) ) ) |

Plaintiff Xiaoyuan Zhang ("Plaintiff"), individually and on behalf of all other persons similarly situated, by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants, alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys, which included, among other things, a review of the Defendants' public documents, conference calls and announcements made by Defendants, United States Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding Valaris plc ("Valaris" or the "Company"), analysts' reports and advisories about the Company, and information readily obtainable on the Internet. Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

**NATURE OF THE ACTION**

1.      This is a federal securities class action on behalf of a class consisting of all persons other than Defendants who purchased or otherwise acquired Valaris securities between April 11, 2019 and July 31, 2019, both dates inclusive (the "Class Period"), seeking to recover damages caused by Defendants' violations of the federal securities laws and to pursue remedies under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder, against the Company and certain of its top officials.

2.      Valaris is headquartered in London, the United Kingdom.  The Company provides offshore drilling services in various water depths worldwide, operating a rig fleet of ultra-deepwater drillships, versatile semisubmersibles, and modern shallow-water jackups.   The Company's offshore fleet includes sixteen drillships, twelve semisubmersibles, fifty-four jackups, and two deepwater managed units.

3.      On April 11, 2019, Ensco plc ("Ensco") and Rowan Companies plc ("Rowan") merged to form Ensco Rowan plc ("Ensco Rowan"), which was touted as an industry-leading offshore driller.  On July 2, 2019, Ensco Rowan announced that it would change its name to Valaris plc, effective July 31, 2019, and that the Company's ordinary shares would trade under the new ticker symbol "VAL" following the name change.

4.      Throughout the Class Period, Defendants made materially false and misleading statements regarding the Company's business, operational and compliance policies.  Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) the Company was plagued by a weak ultra-deepwater segment, massive cash usage, and significant negative cash flow; (ii) the foregoing was reasonably likely to have a material negative impact on the Company's second quarter 2019 results; (iii) the merger leading to Valaris's establishment

could not deliver on its touted benefits; and (iv) as a result, the Company's public statements were materially false and misleading at all relevant times.

5.      On July 31, 2019, Valaris issued a press release announcing its second quarter 2019 financial results—purportedly its first earnings report post-merger reflecting the results of the combined company—which missed market expectations (the "2Q 2019 Press Release"). Upon issuance of the 2Q 2019 Press Release, *Seeking Alpha* published an article on August 2, 2019, entitled "Valaris PLC - Off To A Bad Start" (the "*Seeking Alpha* Article"), noting that Valaris's results "shock[ed] investors with massive cash usage [and] . . . surprisingly weak outlook for the ultra-deepwater segment with further dayrate recovery likely delayed until at least the second half of next year."  The *Seeking Alpha* Article further criticized the Company's free cash flow for the quarter, which was "negative by a whopping $375 million causing the company's remaining pro forma cash balance adjusted for roughly $741 million in payments related to the recent debt tender offer to decline to just $353 million."

6.      On this news, Valaris's stock price fell $3.25 per share, or approximately 39%, over the two trading sessions following the Company's announcement of its quarterly financial results, to close at $5.02 per share on August 2, 2019.

7.      As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

8.      The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

9.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and Section 27 of the Exchange Act.

10.     Venue is proper in this Judicial District pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1391(b).  Valaris securities trade on the New York Stock Exchange ("NYSE"), located within this Judicial District.

11.     In connection with the acts alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communications, and the facilities of the national securities markets.

## PARTIES

12.     Plaintiff, as set forth in the attached Certification, acquired Valaris securities at artificially inflated prices during the Class Period and was damaged upon the revelation of the alleged corrective disclosures.

13.     Valaris is organized under the jurisdiction of England and Wales, and its principal executive offices are located at 6 Chesterfield Gardens, London, United Kingdom.  Valaris securities trade in an efficient market on the NYSE under the ticker symbol "VAL".  During the Class Period and prior to changing its name to Valaris plc, the Company traded on the NYSE under the ticker symbol "ESV".

14.     Defendant Thomas P. Burke ("Burke") has served as Valaris's Chief Executive Officer ("CEO") and President at all relevant times.  Prior to the Ensco Rowan merger, Defendant Burke served as CEO of Rowan.

15.     Defendant Jonathan H. Baksht ("Baksht") has served as Valaris's Senior Vice President and Chief Financial Officer ("CFO") at all relevant times.  Prior to the Ensco Rowan merger, Defendant Baksht served as CFO of Ensco.

16.     Defendants Burke and Baksht are sometimes referred to herein collectively as the "Individual Defendants."

17.     The Individual Defendants possessed the power and authority to control the contents of Valaris' SEC filings, press releases, and other market communications.   The Individual Defendants were provided with copies of Valaris's SEC filings and press releases alleged herein to be misleading prior to or shortly after their issuance and had the ability and opportunity to prevent their issuance or to cause them to be corrected.  Because of their positions with Valaris, and their access to material information available to them but not to the public, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to and were being concealed from the public, and that the positive representations being made were then materially false and misleading.   The Individual Defendants are liable for the false statements and omissions pleaded herein.

## SUBSTANTIVE ALLEGATIONS

### Background

18.     Valaris is headquartered in London, the United Kingdom.  The Company provides offshore drilling services in various water depths worldwide, operating a rig fleet of ultra-deepwater drillships, versatile semisubmersibles, and modern shallow-water jackups.   The Company's offshore fleet includes sixteen drillships, twelve semisubmersibles, fifty-four jackups, and two deepwater managed units.

5

**Materially False and Misleading Statements Issued During the Class Period**

19.     The Class Period begins on April 11, 2019, when the Company issued a press release, pre-market, announcing the completion of the merger of Ensco and Rowan into Ensco Rowan (the "April 2019 Press Release").  The April 2019 Press Release touted, among other things, the Company's "diverse rig fleet of ultra-deepwater drillships, versatile semisubmersibles and modern shallow-water jackups" that purportedly "enable[d] [the Company] to provide drilling services across all water depths with unmatched scale, geographic presence and customer relationships."

20.     The April 2019 Press Release also contained statements by top-level management, including the Individual Defendants, which touted the financial strength and growth opportunities generated by the Ensco Rowan merger.  For example, the April 2019 Press Release quoted Defendant Burke—Valaris' President and CEO, and former CEO of Rowan—who stated, in relevant part:

> The successful completion of our merger further enhances our market leadership with a fleet of high-specification floaters and jackups and diverse customer base. Our growing geographic presence, technologically-advanced drilling rigs and talented employees position us exceptionally well to meet increasing and evolving customer demand. I look forward to executing on the significant long-term growth opportunities we believe we can capture from our combined strengths as the offshore sector recovers.

21.     Similarly, the April 2019 Press Release quoted Carl Trowell ("Trowell")—former CEO of Ensco who became the Company's Executive Chairman following the merger—who stated, in relevant part:

> The combination of Ensco and Rowan creates an industry-leading offshore driller across all water depths, establishing a stronger company capable of thriving throughout the market cycles. Our increased scale, diversification and financial strength will provide significant advantages to better serve our customers and unlock long-term value for our shareholders. We are excited to move forward together as a combined company.

22.     Finally, the April 2019 Press Release quoted Defendant Baksht—the Company's

Senior Vice President and CFO, and formerly the CFO of Ensco—who stated, in relevant part:

> We are pleased with the support of our banking group and their recognition of the
> strengthened position of the Company following the closing of the merger. We
> will have one of the strongest liquidity positions in the offshore drilling sector,
> giving us a competitive advantage as we move forward as a combined company.

23.     On May 1, 2019, the Company issued a press release announcing results for the

first quarter of 2019 that, according to Defendants, "reflect[ed] the performance of Ensco only"

(the "1Q 2019 Press Release").  Despite underwhelming results including, among other things,

missed earnings per share under both a Generally Accepted Accounting Principles ("GAAP")

basis and non-GAAP basis,   Defendant Burke, as quoted in the 1Q 2019 Press Release,

continued to praise the Company's strength as an unparalleled offshore driller, stating, in

relevant part:

> The successful completion of our merger creates an industry-leading offshore
> driller across all water depths and geographies. Our rig fleet of 28 floaters and 53
> jackups is the largest and among the most technologically-advanced in the
> industry, capable of providing a wide range of drilling services to an expanded
> base of clients around the world, and is ideally positioned to meet increasing
> levels of customer demand for the highest-specification ultra-deepwater drillships
> and harsh environment jackups.
>
> * * *
>
> These strengths were recognized by our banking group and, upon closing the
> transaction, we executed an agreement to increase the capacity under our
> unsecured revolving credit facility, bolstering our liquidity. Further, by becoming
> a larger and more diversified company, we are better positioned to continue
> navigating the protracted recovery in the offshore drilling sector.
>
> * * *
>
> EnscoRowan's long track record of safety and operational excellence, combined
> with a focus on deploying new technologies and innovative solutions that
> differentiate our services and drive operational efficiencies, has helped to build
> strong and lasting customer relationships. This led to EnscoRowan being rated

first in total customer satisfaction in the latest independent survey by EnergyPoint Research — the ninth consecutive year that the Company has earned this distinction. As a result of these combined strengths, we continue to win new work for our rigs, and we were pleased to recently be awarded contracts for two of our highest-specification drillships offshore Brazil and Egypt as well as further jackup contracts or extensions in the North Sea, where we are seeing strong customer demand.

24.     The 1Q 2019 Press Release also touted that the Company was "the industry leader in offshore drilling services across all water depths and geographies" that "[o]perat[ed] a high-quality rig fleet of ultra-deepwater drillships, versatile semisubmersibles and modern shallow-water jackups."

25.     On May 2, 2019, the Company filed its Quarterly Report on Form 10-Q with the SEC, reporting the Company's financial and operating results for the quarterly period ended March 31, 2019 (the "1Q 2019 10-Q").  For the quarter, the Company reported net losses of $190.4 million, or $1.75 per diluted share, on revenue of $405.9 million, compared to net losses of $140.1 million, or $1.28 per diluted share, on revenue of $417 million for the same quarter the year prior.

26.     Despite the 1Q 2019 Press Release's representation that "[s]ince the EnscoRowan merger was completed on April 11, 2019, first quarter 2019 results reflect the performance of Ensco only[,]" the 1Q 2019 10-Q stated that "Rowan's financial results will be included in [the Company's] consolidated results beginning on the Transaction Date[,]" which the 1Q 2019 10-Q correctly defined as April 11, 2019—the start of the Class Period.  Specifically, the 1Q 2019 10-Q stated, in relevant part:

> On October 7, 2018, we entered into a transaction agreement ("the Transaction Agreement") with Rowan Companies plc ("Rowan"). On April 11, 2019 (the "Transaction Date"), we completed our combination with Rowan pursuant to the Transaction Agreement (the "Rowan Transaction"). On the Transaction Date, we changed our name to Ensco Rowan plc. Rowan's financial results will be included in our consolidated results beginning on the Transaction Date.

8

27.     With respect to Valaris's cash flows, the 1Q 2019 10-Q stated, in relevant part:

Cash flows from operating activities of continuing operations declined $63.9 million as compared to the prior year period due primarily to declining margins. As challenging industry conditions persist, and our remaining above-market contracts expire and utilization increases with the execution of new market-rate contracts, coupled with the potential impact of rig reactivation costs, our operating cash flows may decline further and remain negative over the near-term.

As of March 31, 2019 we had one premium jackup rig under construction, ENSCO 123 which was delivered in April 2019. In January 2018, we made a $207.4 million milestone payment. The remaining balance of $7.6 million was paid upon delivery. We have two ultra-deepwater drillships under construction, ENSCO DS-13 and ENSCO DS-14, which are scheduled for delivery in September 2019 and June 2020, respectively, or such earlier date that we elect to take delivery with 45 days' notice.

28.     Despite acknowledging issues with cash flow purportedly stemming from declining margins and challenging industry conditions, the 1Q 2019 10-Q continued to tout the Ensco Rowan merger's purported benefits, stating, in relevant part:

The Rowan Transaction is expected to enhance the market leadership of the combined company with a fleet of high-specification floaters and jackups and position us well to meet increasing and evolving customer demand. The increased scale, diversification and financial strength of the combined company will provide us advantages to better serve our customers. Exclusive of two older jackup rigs marked for retirement, Rowan's offshore rig fleet consists of four ultra-deepwater drillships and 19 jackup rigs.

29.     The 1Q 2019 10-Q also touted Valaris's ultra-deepwater capabilities, stating, in relevant part: "We operate the world's largest fleet amongst competitive rigs, including one of the newest ultra-deepwater fleets in the industry and a leading premium jackup fleet."  The 1Q 2019 10-Q also stressed that the Company's "business strategy has been to focus on ultra-deepwater floater and premium jackup operations and de-emphasize other assets and operations that are not part of our long-term strategic plan or that no longer meet our standards for

economic returns[,]" thereby indicating that ultra-deepwater rigging was both one of its strongest and most important segments.

30.     Appended as exhibits to the 1Q 2019 10-Q were signed certifications pursuant to the Sarbanes-Oxley Act of 2002, wherein the Individual Defendants certified that "[t]he [1Q 2019 10-Q] fully complies with the requirements of section 13(a) or 15(d) of the Securities Exchange Act of 1934[,]" and that "[t]he information contained in the [1Q 2019 10-Q] fairly presents, in all material respects, the financial condition and results of operations of the Company."

31.     July 2, 2019, Ensco Rowan announced that it would change its name to Valaris plc, effective July 31, 2019, and that the Company's ordinary shares would trade under the new ticker symbol "VAL" following the name change.

32.     The statements referenced in ¶¶ 19-30 were materially false and misleading because Defendants made false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operational and compliance policies. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) the Company was plagued by a weak ultra-deepwater segment, massive cash usage, and significant negative cash flow; (ii) the foregoing was reasonably likely to have a material negative impact on the Company's second quarter 2019 results; (iii) the merger leading to the Company's establishment could not deliver on its touted benefits; and (iv) as a result, the Company's public statements were materially false and misleading at all relevant times.

**The Truth Begins to Emerge**

33.     On July 31, 2019, Valaris issued a press release announcing its second quarter 2019 financial results—purportedly its first earnings report post-merger reflecting the results of

the combined company—which missed market expectations (the "2Q 2019 Press Release"). Upon issuance of the 2Q 2019 Press Release, analysts at *Seeking Alpha* published an article on August 2, 2019, entitled "Valaris PLC - Off To A Bad Start", and noted that Valaris' results "shock[ed] investors with massive cash usage [and] . . . surprisingly weak outlook for the ultra-deepwater segment with further dayrate recovery likely delayed until at least the second half of next year." The *Seeking Alpha* Article further criticized the Company's free cash flow for the quarter, which was "negative by a whopping $375 million causing the company's remaining pro forma cash balance adjusted for roughly $741 million in payments related to the recent debt tender offer to decline to just $353 million."

34.     Additionally, following the release of its second quarter financial results, Valaris was downgraded to Market Perform from Outperform at Wells Fargo, and according to *Seeking Alpha*, "cut EBITDA forecasts through 2021 to account for revised rig startup assumptions, more conservative utilization and dayrate assumptions on floaters and revised cost assumptions," and "continue[d] to be disappointed by the lack of contracts at rates peers are able to achieve[.]" Additionally, Wells Fargo saw "the company's outlook having more inherent risk going forward."

35.     On this news, Valaris's stock price fell $3.25 per share, or approximately 39%, over the two trading sessions following the Company's announcement of its quarterly financial results, to close at $5.02 per share on August 2, 2019.

36.     As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

37.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise acquired Valaris securities during the Class Period (the "Class"); and were damaged upon the revelation of the alleged corrective disclosures.  Excluded from the Class are Defendants herein, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

38.     The members of the Class are so numerous that joinder of all members is impracticable.  Throughout the Class Period, Valaris securities were actively traded on the NYSE.  While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class.  Record owners and other members of the Class may be identified from records maintained by Valaris or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

39.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

40.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

41.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

- whether the federal securities laws were violated by Defendants' acts as alleged herein;

- whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the business, operations and management of Valaris;

- whether the Individual Defendants caused Valaris to issue false and misleading financial statements during the Class Period;

- whether Defendants acted knowingly or recklessly in issuing false and misleading financial statements;

- whether the prices of Valaris securities during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and

- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

42.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

43.     Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

- the omissions and misrepresentations were material;

- Valaris securities are traded in an efficient market;

- the Company's shares were liquid and traded with moderate to heavy volume during the Class Period;

- the Company traded on the NYSE and was covered by multiple analysts;

- the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's securities; and

- Plaintiff and members of the Class purchased, acquired and/or sold Valaris securities between the time the Defendants failed to disclose or misrepresented material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts.

44.     Based upon the foregoing, Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

45.     Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128, 92 S. Ct. 2430 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information, as detailed above.

## COUNT I

### (Violations of Section 10(b) of the Exchange Act and Rule 10b-5 Promulgated Thereunder Against All Defendants)

46.     Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

47.     This Count is asserted against Defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

48.     During the Class Period, Defendants engaged in a plan, scheme, conspiracy and course of conduct, pursuant to which they knowingly or recklessly engaged in acts, transactions, practices and courses of business which operated as a fraud and deceit upon Plaintiff and the

other members of the Class; made various untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and employed devices, schemes and artifices to defraud in connection with the purchase and sale of securities.  Such scheme was intended to, and, throughout the Class Period, did:  (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; (ii) artificially inflate and maintain the market price of Valaris securities; and (iii) cause Plaintiff and other members of the Class to purchase or otherwise acquire Valaris securities and options at artificially inflated prices.  In furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each of them, took the actions set forth herein.

49.     Pursuant to the above plan, scheme, conspiracy and course of conduct, each of the Defendants participated directly or indirectly in the preparation and/or issuance of the quarterly and annual reports, SEC filings, press releases and other statements and documents described above, including statements made to securities analysts and the media that were designed to influence the market for Valaris securities.  Such reports, filings, releases and statements were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about Valaris' finances and business prospects.

50.     By virtue of their positions at Valaris, Defendants had actual knowledge of the materially false and misleading statements and material omissions alleged herein and intended thereby to deceive Plaintiff and the other members of the Class, or, in the alternative, Defendants acted with reckless disregard for the truth in that they failed or refused to ascertain and disclose such facts as would reveal the materially false and misleading nature of the statements made, although such facts were readily available to Defendants.  Said acts and omissions of Defendants

were committed willfully or with reckless disregard for the truth.  In addition, each Defendant knew or recklessly disregarded that material facts were being misrepresented or omitted as described above.

51.    Information showing that Defendants acted knowingly or with reckless disregard for the truth is peculiarly within Defendants' knowledge and control.  As the senior managers and/or directors of Valaris, the Individual Defendants had knowledge of the details of Valaris' internal affairs.

52.    The Individual Defendants are liable both directly and indirectly for the wrongs complained of herein.  Because of their positions of control and authority, the Individual Defendants were able to and did, directly or indirectly, control the content of the statements of Valaris.  As officers and/or directors of a publicly-held company, the Individual Defendants had a duty to disseminate timely, accurate, and truthful information with respect to Valaris' businesses, operations, future financial condition and future prospects.  As a result of the dissemination of the aforementioned false and misleading reports, releases and public statements, the market price of Valaris securities was artificially inflated throughout the Class Period.  In ignorance of the adverse facts concerning Valaris' business and financial condition which were concealed by Defendants, Plaintiff and the other members of the Class purchased or otherwise acquired Valaris securities at artificially inflated prices and relied upon the price of the securities, the integrity of the market for the securities and/or upon statements disseminated by Defendants, and were damaged thereby.

53.    During the Class Period, Valaris securities were traded on an active and efficient market.  Plaintiff and the other members of the Class, relying on the materially false and misleading statements described herein, which the Defendants made, issued or caused to be

disseminated, or relying upon the integrity of the market, purchased or otherwise acquired shares of Valaris securities at prices artificially inflated by Defendants' wrongful conduct.  Had Plaintiff and the other members of the Class known the truth, they would not have purchased or otherwise acquired said securities, or would not have purchased or otherwise acquired them at the inflated prices that were paid.  At the time of the purchases and/or acquisitions by Plaintiff and the Class, the true value of Valaris securities was substantially lower than the prices paid by Plaintiff and the other members of the Class.  The market price of Valaris securities declined sharply upon public disclosure of the facts alleged herein to the injury of Plaintiff and Class members.

54.    By reason of the conduct alleged herein, Defendants knowingly or recklessly, directly or indirectly, have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

55.    As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases, acquisitions and sales of the Company's securities during the Class Period, upon the disclosure that the Company had been disseminating misrepresented financial statements to the investing public.

## COUNT II

**(Violations of Section 20(a) of the Exchange Act Against The Individual Defendants)**

56.    Plaintiff repeats and re-alleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

57.    During the Class Period, the Individual Defendants participated in the operation and management of Valaris, and conducted and participated, directly and indirectly, in the conduct of Valaris' business affairs.  Because of their senior positions, they knew the adverse

non-public information about Valaris' misstatement of income and expenses and false financial statements.

58.     As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to Valaris' financial condition and results of operations, and to correct promptly any public statements issued by Valaris which had become materially false or misleading.

59.     Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which Valaris disseminated in the marketplace during the Class Period concerning Valaris' results of operations.   Throughout the Class Period, the Individual Defendants exercised their power and authority to cause Valaris to engage in the wrongful acts complained of herein. The Individual Defendants therefore, were "controlling persons" of Valaris within the meaning of Section 20(a) of the Exchange Act.   In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of Valaris securities.

60.     Each of the Individual Defendants, therefore, acted as a controlling person of Valaris.  By reason of their senior management positions and/or being directors of Valaris, each of the Individual Defendants had the power to direct the actions of, and exercised the same to cause, Valaris to engage in the unlawful acts and conduct complained of herein.  Each of the Individual Defendants exercised control over the general operations of Valaris and possessed the power to control the specific activities which comprise the primary violations about which Plaintiff and the other members of the Class complain.

61.     By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by Valaris.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff demands judgment against Defendants as follows:

A.     Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as the Class representative;

B.     Requiring Defendants to pay damages sustained by Plaintiff and the Class by reason of the acts and transactions alleged herein;

C.     Awarding Plaintiff and the other members of the Class prejudgment and post-judgment interest, as well as their reasonable attorneys' fees, expert fees and other costs; and

D.     Awarding such other and further relief as this Court may deem just and proper.

## **DEMAND FOR TRIAL BY JURY**

Plaintiff hereby demands a trial by jury.

Dated:  August 20, 2019                                Respectfully submitted,

                                                                    **POMERANTZ LLP**

                                                                    */s/ Jeremy A. Lieberman*
                                                                    Jeremy A. Lieberman
                                                                    J. Alexander Hood II
                                                                    600 Third Avenue, 20th Floor
                                                                    New York, New York 10016
                                                                    Telephone: (212) 661-1100
                                                                    Facsimile: (212) 661-8665
                                                                    Email: jalieberman@pomlaw.com
                                                                    Email: ahood@pomlaw.com

                                                                    **POMERANTZ LLP**
                                                                    Patrick V. Dahlstrom
                                                                    10 South La Salle Street, Suite 3505

Chicago, Illinois 60603
Telephone: (312) 377-1181
Facsimile: (312) 377-1184
Email: pdahlstrom@pomlaw.com

***Attorneys for Plaintiff***

## CERTIFICATION PURSUANT
## TO FEDERAL SECURITIES LAWS

1.     I,   Xiaoyuan Zhang                          , make this

declaration pursuant to Section 27(a)(2) of the Securities Act of 1933 ("Securities Act") and/or Section

21D(a)(2) of the Securities Exchange Act of 1934 ("Exchange Act") as amended by the Private Securities

Litigation Reform Act of 1995.

2. I have reviewed a Complaint against Valaris plc. ("Valaris" or the "Company") and authorize the

filing of a comparable complaint on my behalf.

3. I did not purchase or acquire Valaris securities at the direction of plaintiffs counsel, or in order to

participate in any private action arising under the Securities Act or Exchange Act.

4.   I am willing to serve as a representative party on behalf of a class of investors who purchased or

acquired Valaris securities during the class period, including providing testimony at deposition and trial, if

necessary.  I understand that the Court has the authority to select the most adequate lead plaintiff in this

action.

5.  To the best of my current knowledge, the attached sheet lists all of my transactions in Valaris

securities during the Class Period as specified in the Complaint.

6.  During the three-year period preceding the date on which this Certification is signed, I have not

sought to serve as a representative party on behalf of a class under the federal securities laws.

7.   I agree not to accept any payment for serving as a representative party on behalf of the class as

set forth in the Complaint, beyond my pro-rata share of any recovery, except such reasonable costs and

expenses directly relating to the representation of the class as ordered or approved by the Court.

8.  I declare under penalty of perjury that the foregoing is true and correct.

Executed ___8/15/2019___
                (Date)

                                             (Signature)

                              Xiaoyuan zhang
                                          (Type or Print Name)

**Valaris plc (VAL) (f/k/a Ensco Rowan plc)**                                **Zhang, Xiaoyuan**

**List of Purchases and Sales**

| Date | Purchase or Sale | Number of Shares/Unit | Price Per Share/Unit |
|------|------------------|-----------------------|----------------------|
| 6/7/2019 | Purchase | 900 | $7.8700 |
| 6/25/2019 | Purchase | 1,100 | $7.6000 |
| 6/27/2019 | Purchase | 1,500 | $8.4300 |
| 6/28/2019 | Purchase | 1,000 | $8.3500 |
| 7/3/2019 | Purchase | 2,000 | $8.5000 |
| 7/12/2019 | Purchase | 1,000 | $9.0000 |
| 7/15/2019 | Purchase | 500 | $8.5300 |
| 7/16/2019 | Purchase | 1,000 | $8.4500 |
| 7/17/2019 | Purchase | 1,000 | $8.1200 |
| 7/22/2019 | Purchase | 1,000 | $7.7400 |
| 6/28/2019 | Sale | (2,100) | $8.4800 |
| 7/8/2019 | Sale | (2,000) | $8.9400 |
| 7/30/2019 | Sale | (1,000) | $8.2200 |