**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| XIAOYUAN ZHANG, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> VALARIS PLC, THOMAS BURKE, and JONATHAN H. BAKSHT, <br><br> Defendants | Case No.: 1:19cv7816-NRB |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF PLAINTIFF'S**
**MOTION FOR ALTERNATIVE SERVICE AND EXTENSION**
**OF TIME TO SERVE DEFENDANTS**

Around the world daily life has been disrupted as the COVID-19 pandemic has resulted in a global lockdown. These unprecedented times have caused the Hague Convention to close for an indefinite period of time. It is unknown how long the pandemic will last or how long the Hague Convention will remain unclosed.

While the Hague Convention offers one means of serving international parties, it is by no means the only. Alternate service under Rule 4(f)(3) "requires only that service be '(1) directed by the court; and (2) not prohibited by international agreement.'" *In re GLG Life Tech Corp. Sec. Litig.*, 287 F.R.D. 262, 267 (S.D.N.Y. 2012) (quoting *Rio Props., Inc. v. Rio Intern. Interlink,* 284 F.3d 1007, 1014 (9th Cir. 2002)). Importantly, service under Rule 4(f)(3) "is neither a last resort nor extraordinary relief" and "is as favored as service under Rule 4(f)(1) inasmuch as it is merely one means among several which enables service of process on an international defendant." *Id.* at 265.[1] Accordingly, given these unique times, and given the Hague Convention is no longer

---

[1] Unless otherwise indicated, all internal quotations and citations are omitted and emphasis is added. All capitalized

available for international service, Plaintiff has requested permission for alternate service under Rule 4(f)(3).

While the standard for alternate service is clear, Defendants attempt to narrowly construe Rule 4(f)(3) as imposing unattainable requirements and limitations that are unsupported by precedent or law. First, Defendants incorrectly argue that service through the Hague Convention is "mandatory" when this District has explicitly rejected this notion. *GLG Life Tech Corp.*, 287 F.R.D. at 266 n. 7 ("[the case law] does not hold or even suggest that the Hague Convention must always be complied with before alternative service is ordered."); *U.S. v. Lebanese Candadian Bank SAL*, 285 F.R.D. 262, 265 (S.D.N.Y. 2012) ("there is no hierarchy among the subsections in Rule 4(f)."); *NYKCool A.B. v. Pac. Int'l Servs., Inc.*, 2015 U.S. Dist. LEXIS 27434, at *9-10 (S.D.N.Y. Mar. 5, 2015) ("it is not necessary to exhaust or demonstrate the impossibility of service under Rule 4(f)(1)-(2) before resorting to service under Rule 4(f)(3)."). Even if it were mandatory, Plaintiff has already spent over four months unsuccessfully attempting to effect service through the Hague Convention and has amply demonstrated the impossibility of doing so in the immediate future due to the COVID-19 pandemic.

Next, Defendants argue that Plaintiff has failed to demonstrate that Court intervention is necessary because there is no "substantive reason" preventing service through the Hague Convention. The closure of the Hague Convention, however, is a "substantive" reason. Further, neither Rule 4(f) nor the case law requires a "substantive reason." Thus, whether substantive or not, the fact that the Hague Convention is indefinitely closed is a valid reason supporting alternate service.

---

terms shall have the same meaning as set forth in Plaintiff's Motion for Alternative Service and Extension of Time to Serve Defendants, Dkt. No. 37 (the "Motion"). Any references to "DB" refer to Defendants' Partial Opposition to Plaintiff's Motion For Alternative Service and Extension of Time to Service Defendants, Dkt. No. 39.

Defendants further argue there is no urgency requiring immediate service. But the case law has consistently found alternate service appropriate "in order to prevent further delays in litigation." *LG Elecs., Inc. v. ASKO Appliances, Inc.*, 2009 U.S. Dist. LEXIS 53391, at *13-14 (D.Del. June 23, 2009). This is particularly true here where it could be months or even years before the Coronavirus pandemic ends.

When viewed as a whole, the current circumstances easily warrant alternate service. Plaintiff has attempted to effect service through the Hague Convention for over four months but due to a global pandemic the Hague Convention is closed indefinitely, making it an absolute impossibility to effect service through the Hague Convention. Unless alternate service is granted, the Defendants cannot be served for potentially years, despite the fact they are well aware of this litigation and that alternate means of service that comport with due process are available.

## **ARGUMENT**[2]

As noted above, alternate service under Rule 4(f)(3) "requires only that service be '(1) directed by the court; and (2) not prohibited by international agreement.'" *GLG Life Tech Corp.*, 287 F.R.D. at 267 (quoting *Rio Props., Inc.,* 284 F.3d at 1014). When evaluating whether a Court should direct alternate service, some courts evaluate the following two criteria: "(1) a showing that the plaintiff has reasonably attempted to effectuate service on the defendant, and (2) a showing that the circumstances are such that the court's intervention is necessary." *Lebanese Candadian Bank*, 285 F.R.D. at 267.

---

[2] Defendants do not oppose Plaintiff's request for an extension of time to serve Defendants (DB at 6 n.5) or Plaintiff's proposed methods of alternate service (DB at 1 n.2). Accordingly, this reply brief only addresses Defendants' argument that alternate service should not be permitted. All unopposed arguments in Plaintiff's Motion should be granted.

Defendants do not dispute that international agreement does not prohibit the alternate service proposed here.[3] Nor do Defendants challenge that Plaintiff has reasonably attempted service. Rather, Defendants argue that alternate service should not be permitted because the circumstances do not warrant court intervention.

As set forth below, the indefinite closure of the Hague Convention due to a global pandemic warrants court intervention.

## I. The Closure of the Hague Convention For An Indefinite Period Warrants Court Intervention and Alternate Service

As set forth in Plaintiff's Motion, the Hague Convention has been indefinitely closed since March 24, 2020 due to a global pandemic. Motion at 8. The United Kingdom continues to have a "stay at home" order in place preventing anyone from leaving home other than for necessities, such as food.[4] Process servers are not operating. Motion at 8, 11. Service through the Hague Convention is literally impossible at this time.

Defendants do not deny that the Hague Convention is closed or that Plaintiff has attempted for over four months to effect service through the Hague Convention. DB at 1. Defendants do not refute that it may be months or even years before this pandemic is over or before the Hague Convention opens. Rather, Defendants argue that Plaintiff must wait an indefinite period of time for the Hague Convention to open. This drastic stance does not comport with the case law, where alternate service is frequently awarded in cases where service cannot be performed within a reasonable time frame. *See, e.g., The Knit With v. Knitting Fever, Inc.,* 2010 U.S. Dist. LEXIS 129870, at *7-8 (E.D.Pa. Dec. 7, 2010) (plaintiff granted leave to serve a defendant via counsel where Hague Convention was not accepting documents for service during the month of August

---

[3] As set forth in Plaintiff's Motion, the proposed methods of alternate service comport with due process. Motion at 12-19. Defendants do not contend otherwise.

[4] Gov.UK, https://www.gov.uk/coronavirus

and represented that any service  would take up to three months). In fact, courts have already found COVID-19 as a basis for permitting alternate service. *See Spencer v. City of Cibolo*, 2020 U.S. Dist. LEXIS 73936, at *3 (W.D. Tex. Apr. 27, 2020) (permitting substitute service due to COVID-19 pandemic and stay home order after only one week of unsuccessful attempted service); *see also Jurina v. GTS Transp. Corp.*, No. 19-317, 2020 U.S. Dist. LEXIS 76852, at *6 (W.D. Pa. May 1, 2020) (noting COVID-19 concerns).

Defendants' additional arguments against alternate service lack merit and are not supported by case law. First, despite Defendants' contention otherwise, service through the Hague Convention is neither a prerequisite nor required in order to allow service through alternate means under Rule 4(f)(3). *GLG Life Tech Corp.*, 287 F.R.D. at 266 ("nothing in Rule 4(f) itself or controlling case law suggests that a court must always require a litigant to first exhaust the potential for service under the Hague Convention before granting an order permitting alternative service under Rule 4(f)(3)."); *Lebanese Candadian Bank*, 285 F.R.D. at 265-66 ("there is no hierarchy among the subsections in Rule 4(f) . . . . [it] is neither a last resort nor extraordinary relief"); *Wash. State. Inv. Bd. v. Odebrecht S.A.*, 2018 U.S. Dist. LEXIS 163356, at *9 (S.D.N.Y. Sept. 21, 2018) ("A plaintiff is not required to attempt service through the other provisions of Rule 4(f) before the Court may order service pursuant to Rule 4(f)(3), however."); *Rio Props. Inc.*, 284 F.3d at 106 ("RIO need not have attempted every permissible means of service of process before petitioning the court for alternative relief. Instead, RIO needed only to demonstrate that the facts and circumstances of the present case necessitated the district court's intervention.").[5]

---

[5]None of the cases cited by Defendants (DB at 2) support their contention. In *Baliga v. Link Motion Inc*., 385 F. Supp. 3d 212, 220 (S.D.N.Y. 2019), the plaintiff conceded service was improper, failed to provide any grounds for why alternate service was appropriate, and never attempted to effect any proper service. In *Altos Hornos de Mex., S.A.B. de C.V. v. Rock Resource Ltd*., 2015 WL 6437384, at *3 (S.D.N.Y. Oct. 19, 2015), the motion for alternate service came only two weeks after the first attempt at service was made. In *Advanced Aerofoil Techs., AG v. Todaro*, 2012 WL 299959, at *2-3 (S.D.N.Y. Jan. 31, 2012), "Switzerland and Germany ha[d] explicitly objected to service" through the proposed alternate means. Accordingly, the court denied the motion but permitted leave to renew the motion at a

5

Defendants' reliance on Rule 4's Advisory Committee notes and *Volkswagenwerk* to state otherwise has been explicitly rejected. *See GLG Life Tech Corp.*, 287 F.R.D. at 266 n. 7 ("V*olkswagenwerk* does not hold or even suggest that the Hague Convention must always be complied with before alternative service is ordered."); *Gurung v. Malhotra*, 279 F.R.D. 215, 218 (S.D.N.Y. 2011) (rejecting the argument that *Volkswagenwerk* dictates that the Hague Convention provides "the only available and proper method of service" and finding alternate service proper if Hague Convention service fails). In fact, service by alternate means has been granted under circumstances where no efforts whatsoever have been made to serve a party through the Hague Convention. *See e.g., Odebrecht S.A.,* 2018 U.S. Dist. LEXIS 163356, at *16-17 (allowing alternate service despite never attempting service through the international convention, noting that "[s]everal courts in this district have cited concerns about [ ] delays in excusing plaintiffs from utilizing the Hague Convention or other international agreements regarding service of process."); *Brown v. China Integrated Energy, Inc.*, 285 F.R.D. 560 (C.D. Cal. 2012) (granting alternate service despite no attempts at service through the Hague Convention). Indeed, as the Advisory Committee notes state, the use of the Hague Convention procedures can only occur "when available." Here, Plaintiff has already attempted service through the Hague Convention unsuccessfully for over four months, and it is indisputable that service through the Hague Convention is not "available" at this time and will not be available for the foreseeable future.[6]

Second, Defendants argue that alternate service is not appropriate because there is no "substantive reason" preventing the Hague Convention from effecting service. Defendants fail to

---

later date.

[6] The Advisory Committee notes furthermore do not apply where, as here, the proposed service is made upon counsel in the United States. *GLG Life Tech Corp.*, 287 F.R.D. at 266 n. 7 ("*Volkswagenwerk* held only that the Hague Convention did not apply where service was made on a foreign citizen's agent within the United States. It held that the Convention did not apply because no judicial document was actually transmitted for service abroad, even though it was obvious that the domestic agent would ultimately transmit the service documents to the defendant in the foreign country.").

explain how the closure of the Hague Convention due to a global pandemic is not a substantive reason. Even so, the Advisory Committee notes make clear that if the Hague Convention does not respond within six months (regardless of the reason) it can warrant alternate service. *See* Advisory Committee Notes ("The Hague Convention does not specify a time within which a foreign country's Central Authority must effect service, but Article 15 does provide that alternate methods may be used if a Central Authority does not respond within six months."). Over four months have passed in this case with no immediate plans by the Hague Convention to reopen. Accordingly, there is no reason to continue to inevitably delay the litigation while the Hague Convention remains closed.

Furthermore, Defendants' assertion that cases involving a Hague Convention signatory "only" grant alternate service where compliance "is being impeded by the receiving jurisdictions *own* policy decisions or unwillingness to cooperate" (DB at 3) is simply not true. In fact, as the cases above illustrate, alternate service is granted for a multitude of reasons. In fact, the *Zhang* case Defendants rely upon (DB at 4) makes this clear: "So long as [authorized by the court and not prohibited by international agreement], it should not, and does not, matter whether service was attempted pursuant to Rule 4(f)(1) or (2) and, if so, ***whether or why such service was unsuccessful***." *Zhang v. Baidu.Com Inc.,* 293 F.R.D. 508, 512 (S.D.N.Y. 2013); *See also* DB at 4, citing *RSM Prod. Corp. v. Fridman*, 2007 WL 1515068, at \*1 (S.D.N.Y. May 24, 2007) ("Court-directed service pursuant to Rule 4(f)(3) may be justified under certain circumstances, however, such as when Hague Service Convention methods do not permit service 'within the time required by the circumstances'").[7]

---

[7] While the cases Defendants rely upon (DB at 3-4) involved instances of the jurisdiction's unwillingness to cooperate, no where do they state that noncompliance by the receiving jurisdiction is the only means to allow alternate service.

Third, Defendants argue that a delay in litigation does not support alternate service. Yet courts continuously find delays in time similar to here as supporting alternate service. *See China Integrated Energy.,* 285 F.R.D. at 562–66 (ordering alternative service and noting that service of defendant under the Hague Convention would take four to six months); *Ackerman v. Global Vehicles U.S.A., Inc.*, 2011 U.S. Dist. LEXIS 96173, at *9 (E.D.Mo. Aug. 26, 2011) (authorizing service on defendant's counsel "so as to not further delay" the lawsuit where service through the Hague Convention was expected to take up to 120 days); *LG Elecs., Inc.*, 2009 U.S. Dist. LEXIS 53391, at *13-14 (authorizing service on defendant's counsel "to prevent further delays in litigation"); *The Knit With.,* 2010 U.S. Dist. LEXIS 129870, at *7-8 (alternate service where Hague Convention was not accepting documents during the month of August and represented that service would take up to three months). While the Hague Convention may intend to satisfy its obligations "as promptly as possible" (DB at 3), that has no import or relevance here where it remains closed for an indefinite period of time. *Gurung*, 279 F.R.D. at 218 (granting alternate service after five months of attempted service through the convention).

## II.   Defendants Do Not Dispute Proposed Service of Defendant Baksht Is Proper Under Texas Rule Of Civil Procedure 106

Defendants' opposition does not address Plaintiff's request to serve Defendant Baksht pursuant to Rule 4(e)(1) and Texas Rule of Civil Procedure 106. *See* Motion at 9-12. As set forth in Plaintiff's Motion, Rule 4(e)(1) permits "following state law" for service, and Texas Rule of Civil Procedure 106 permits service by certified mail, return receipt requested, or, if in-person service is unsuccessful, service may also be made "in any other manner . . . [that] will be reasonably effective to give the defendant notice of the suit." Motion at 9-10. Accordingly, because Defendants do not challenge service of Defendant Baksht on these grounds, and Plaintiff has fully satisfied the requirements under Rule 4(e)(1) and Texas Rule of Civil Procedure 106, Plaintiff's

request to serve Defendant Baksht by certified mail, return receipt requested to his Texas residence, and to effect service to Defendant Baksht's email address, should be granted.

## CONCLUSION

For the aforementioned reasons, and those stated in Plaintiff's Motion, the indefinite closure of the Hague Convention warrants alternate service in this case, particularly where Defendants are aware of the litigation, Plaintiff has already attempted service through the Hague Convention, and there are no other means to effect service given the extraordinary circumstances of the COVID-19 pandemic. The proposed methods by Plaintiff comport with Defendants' due process rights and should therefore be granted.

Dated: May 8, 2020                          Respectfully submitted,

                                            **LEVI & KORSINSKY, LLP**
                                            */s/ Shannon L. Hopkins*
                                            Shannon L. Hopkins
                                            1111 Summer Street, Suite 403
                                            Stamford, Connecticut 06905
                                            Tel: (203) 992-4523
                                            Email: shopkins@zlk.com

9